Good afternoon, Illinois Appellate Court. First District Court is now in session, the Sixth Division. The Honorable Mary Mick for presiding. Case number 1-9-2-3-2-5 Constantinou versus Global Financial Credit LLC and Athletico Limited. Thank you. Good afternoon, counsel. Welcome to our Zoom oral argument. As is usually the case, you'll have 20 minutes per side and I will ask the appellant if you would like to reserve any of that 20 minutes for rebuttal. I'll reserve five minutes, Your Honor. Larry Drury for the appellant. Thank you, Mr. Drury. And actually, before I start counting either of your time, let me ask each of you to say and spell your names for the record and who you represent. You can begin, Mr. Drury. Larry, L-A-R-R-Y, Drury, D-R-U-R-Y. I represent the appellant. Good afternoon, Your Honors. Christine, C-H-R-I-S-T-I-N-E, Skoczylas, S-K-O-C-Z-Y-L-A-S. I represent Defendant Appellee, Athletico Limited. And with the court's permission, Codefendant's counsel and I will split our argument. That's fine. All right. Good morning, Your Honors. Kingpoor, K-I-N-G-P-O-O-R. And I represent the codefendant, Global Financial, referred to in the briefs as Medcheck. All right. Are you going to, counsel, are you going to split it by topic? I mean, the issues are pretty similar as to both defendants, I believe. I'll be beginning and I will be covering the plaintiff's, the dismissal plaintiff's complaint and Mr. Poore will cover the denial of the plaintiff's motion for leave to amend. All right. Thank you very much. Mr. Drury, you may begin. Thank you, Your Honor. In the proceedings below, the court took the position that money is owed, the debt is there, but there's nothing in the record whatsoever to establish that anything is owed. Yet the trial judge focused the entire, just about the entire argument on that issue. We are contesting whether or not the lien that was placed on my client's account by Medchecks through an assignment from assign the lien to someone or an entity that's not a medical professional or a medical provider, neither of which Medcheck is. So the assignment of the lien is invalid from the beginning. The court did not really get into that issue very much because the court was totally focused on whether or not the money is owed. And in reading the transcript, you can see that the money is owed, the money is due. The answer to that is there's nothing in the record to establish that. So if we start looking at the complaint to see whether or not we stated viable causes of action, I believe each and every count has the necessary allegations to inform each of these defendants of the nature of our claims. And that's what we need to do. And that is what we did do. So that is really the first issue as to whether or not we stated valid claims. And I believe... Mr. Jury, is it your position that when Athletico assigned the lien, they also assigned the debt, assuming there was a debt? We didn't get that far, Your Honor, because the judge entered an order staying all the proceedings. We never saw the assignment, which I raised as part of our arguments. So we don't know what the assignment contains between Athletico and Medchecks. We do know that there was a lien. And we do also know, contrary to the defendant's arguments, that they attempted to enforce that lien because the exhibits that are attached to the complaint show the letter from Athletico to my client saying this matter is now with Medchecks. And then Medchecks went ahead and sent their lien letter out and said we have... Stay with me for a minute, if you would. Sure. Let's assume, because we don't know, you're right, there was no discovery, but let's assume that when Athletico assigned the lien to Medchecks, they also assigned the debt, because that's usually what happens. The lien and the debt go together, right? That's usually what happens. Well, I mean, it may or may not. We know what the lien does. The lien is really collateral for the debt. The lien is the way to collect the debt. The lien is a mechanism that the legislature came up with to make it easy to collect certain debts. It's security for the debt. It's like a when the lien got assigned, the debt got assigned, and it got assigned to Medchecks. Medchecks now owns the debt and the lien. Let's assume this for a minute. I think that's consistent with your complaint. And that lien is by law unenforceable, right? That's your position. Yes. So if that's true, let's assume your client does owe the money. That money should not be sitting in her lawyer's IOLTA account. That money should be hers, and Medchecks can sue her for it. Isn't that right? Well, the money could not be dispersed to her. I understand, but by law, you're saying it should have been dispersed to her. And if she owes it to somebody, it's somebody that doesn't have a lien, and that person can sue her if she owes it. If Medchecks wanted to pursue the debt alone and file a suit on that, I don't see why they couldn't do it. All right. So stay with me for a second. Assume that's true. That money should be released to her. She is losing the time value of the money. Isn't that your complaint? She is losing the time value of the money, but under the rules of professional conduct 1.15e, we cannot release it because there's other people out there and other providers that would have claims. And then they come to us and say, well, why did you go ahead and release it when you're saying that the lien itself is invalid so that you can release the money? Yes, we would need that, but we don't have to go and file a petition to adjudicate the lien to get to that point, which the trial judge was saying. I understand. But the only way that lawyer can release the lien is if somebody tells that lawyer that lien's not valid. You don't have to hold that money for that lien because that that's our position. That lien is illegal, but we follow what the rules required us to do and hold on to it. Then we have MedCheck, your honor, going ahead and moving to enforce that lien. So what we need to do is hand them over the money when there's other providers out there. I don't think so. So in addition to that, your honor, the other issue before the court was whether or not we should have been granted leave to file an amended complaint. Simply put, and considerably abbreviated, the judge said there's no debt. I mean, there's a debt. The money is due. I haven't changed my mind. There's no damages and denied us the ability to file an amended complaint, keeping in mind that the original complaint was dismissed with prejudice. We've never had an opportunity to file an amended complaint in this case. What is it you think your proposed amended complaint added? I mean, I've read it, but what is it you think it added? Well, we added some additional language with respect to the injunction with the irreparable harm. We also put in there, which we didn't have with clarity in the original complaint, that the money was being held in escrow. We tried to clarify on the declaratory judgment count the fact that this is an ongoing, continuing matter, and the lien hasn't been released. This lien has not been released. Basically, the additional allegations, keeping in mind, your honor, for the purposes of the appeal, we incorporated by reference all of the counts of the previously filed complaint, and we put that at the bottom of the amended complaint, and we say just that. We've incorporated those counts for the purpose of appeal, and then we added to the injunction and the declaratory judgment counts. The trial court didn't recognize that this assignment created damages to your client. Would you like to address that? Yes, I would, your honor. As Judge Mikva mentioned before, one of the questions of damages goes to the time value of the money. The to assess their money, a personal injury cause of action, and we cited in our brief, I believe it's the Seymour case, is an asset, and that asset is being held up by the lien. In addition to that, the lien is, as I mentioned, it's collateral, and as a lien is also an encumbrance, so as a result of this lien, there's an encumbrance on the settlement which prohibits my client from being able to access her monies, get interest on the monies, invest her monies, and in these days and times, having every penny counts. The trial court refused to recognize the damages, and they also, she also indicated that this was not a proper deck action. Would you like to comment on whether or not you properly were entitled to a deck action? Yes, I mean, declaratory judgment is you're basically asking the court to declare the rights of the party, the parties. The court took the position that there was nothing to declare here because all of the conduct and acts of which we complained had already taken place, so you cannot have a declaratory judgment for something that's already taken place. Declaratory judgment has to come before the event, but our complaint as well as the amended complaint which we proffered to the court, which we believe was denied, states quite clearly in several places that the conduct of these defendants is ongoing and continuing. They're still doing it. That action is still out there today. I mean, their excuse is, well, this is factoring that check so we can buy this debt for whatever discount they get and go ahead and purport to have a valid lien and send it out to people and tie up their money when they know that they shouldn't. So specifically, Your Honor, the declaratory judgment allegations do not stop with just saying we want declaratory judgment. Those allegations say this is an ongoing, continuing conduct by this defendant. Before you run out of time, just to briefly address the other claims, the non-equitable claims, the fraud and the unjust enrichment and the economic loss, there were alternative reasons that had nothing to do with the damages that the trial court also relied on, the defendants also address, that there was no deception, there was no enrichment, there was no economic loss, the Mormon doctrine, you do not address those at all in your briefing and I'm wondering why we wouldn't affirm on those claims on that basis since you did not address them. The defendants have argued it and kind of, I think Your Honor is talking about, did we forfeit those arguments by not addressing it in our opening brief? And the answer to that is we did not and Supreme Court Rule 366 clearly gives Your Honors the ability to grant any relief that could have been granted or that should be granted. And the question is, would it be inequitable at this time for the court to consider on the merits, the allegations of our complaint on a basis of forfeiture? Forfeiture is an admonition to the court, it's not a limitation to the court. So what I'm saying is all of our counts have been incorporated by reference in the amended complaint, everything is before the court and just because it has been specifically addressed in the opening brief, it's there for Your Honors to consider and under Rule 366, you certainly can. Addressing each of the other counts, Your Honor, the Yickfoot count also has whether or not what these defendants are doing is unfair and we clearly make the allegation that it's unfair and the judge never addressed that issue. The other question is, is there an omission here? Was there an omission to my client that when you come in there for services, whatever it is that we're going to charge you, we're going to send out a lien and we're going to tie up whatever settlement you may have as a result of the accident for which you're being treated. To us, that's an omission and it's an expectation which the plaintiff would expect. Their money isn't going to be all tied up. They came there for treatment. They didn't come there for that. On the unjust enrichment, it's quite clear that Athletico received money. It's not disputed from Medchex. The exact amount, we don't know. It's probably a discounted amount and Medchex is sitting there with a disputed lien which we say is invalid and all to the detriment of the plaintiff and to the benefit of these defendants. With respect to Mormon, with Mormon, there's exceptions to Mormon, personal injury, property damage, and negligent misrepresentation, each of which are in the allegations of the complaint. Each count of the complaint does, in fact, ask for damages. That's Mormon. The negligence is pretty much the same. The duty to supervise their accounts, monitor their accounts, and the duty of integrity to these people that come there for treatment and care which these defendants don't care about. It's all about the money. Same old story. It's all about the money. I believe that answers each of the counselors. Your Honor, has any further questions? No, and you're just about out of time. Let me just make sure nobody else on the panel has any more questions and then we'll turn to the defendants. Any questions from either Justice Leinach? This was not a legal assignment to begin with, and that therefore raises in my mind, does that not destroy MedCheck's right to collect on the debt that has been illegally or wrongfully assigned to it? I believe it does. I don't think they have any... Well, the debt, as we discussed earlier, is separate from the lien, the lien securing the debt. But considering the overall circumstances under which this lien was improperly assigned to MedCheck's in the first place, I don't believe that they should be allowed to pursue the debt by just saying, okay, the lien's no good. What happens here if the lien, in fact, is the assignment is no good? Does everything then go back to Athletico so that they can go ahead and pursue it? We never really got into that, Your Honor. I think it's questionable at best as to whether or not MedCheck's can go ahead and pursue collection on this debt, considering that they have an invalid assignment of a lien from Athletico to MedCheck's. Counsel, my question is with respect to the damages. You indicate that your client does not have access to her funds and she misses out on interest, et cetera. But had the lien not been assigned, wouldn't she have to pay that to Athletico anyway? If, in fact, Your Honor, there was anything due to Athletico. We've disputed that all the way through. It's in the transcript. We cited it in the brief. There's nothing in this record to show that any money was owed to Athletico. There's nothing establishing any debt here. All you have is a lien that states $11,600 rounds up to $12,000 is due. There's no evidence to that. I mean, there's just nothing in the record to support the trial judge's comments that the money is due. There's a debt. It's not due. They haven't established that anything is due. At a minimum, it should be reversed and remanded back to the trial court for further proceedings. Okay. Thank you, counsel. Would you like to state specifically what you're asking for, Mr. Drury? I'm sorry, Your Honor. I didn't hear you. Uh, state with, uh, specificity that exactly what you're asking this court to do. I'm asking this court, Your Honors, to reverse the, uh, two orders of the, uh, trial court, one dismissing the case, uh, with prejudice and the other denying us leave to file an amended complaint. So I'm asking for a complete reversal, a remand back to the trial court for proceedings for further proceedings as this court deems appropriate. Thank you. Well, excuse me, Your Honor. I would also like a finding that the assignment is invalid and illegal. All right. Before he starts asking for everything, I think we should maybe turn to the defendants. Uh, thank you. Thank you, Your Honor. Um, I'm going to start with the, the question that just is here. We were discussing about whether or not the debt still exists. Um, Mr. Drury insists there's nothing in the record, uh, stating that a debt exists, but I would point the court's attention to the February hearing transcript on page 22, where the court asks, so the debt is not extinguished. Do you agree under any circumstance and plaintiff's counsel responds? No, not under any circumstance here. The debt is not extinguished. And then on page 23 plaintiff's counsel repeats the debt exists. The lien secures the debt. So Athletico has, Athletico has provided services. The plaintiff is in debt to Athletico. Okay. Counsel, I'm going to go with you that far, but then my question is the lien and the debt went with it. Did it not? Well, the question of whether the lien was validly assigned or not, I don't really think is the critical issue. And I think the critical issue was answered by the Wilson court. Oh, I do too. Yeah. I mean, in, in the Wilson case, um, the court acknowledged that the intervener, the, the assignee had a right to sue the plaintiff, a right to recover the debt in contract law or otherwise, and then remanded the case for adjudication of the lien. Okay. Original lien. Go ahead. I'm sorry. No, I, I, the debt, the part that got assigned to the intervener, as the court said in Wilson, the intervener was going to have to collect through a damage action. That's the debt that got assigned to the intervener. That's what the intervener was going to have to do. There were other parts of the lien in Wilson, and that's what got remanded for more lien proceedings. But the part that got assigned that intervener, and I would say here, MedChex has to go into court and file a damages action to collect that amount owed. The Athletico does not assign the lien and still keep the lien. That can't be true. You can't, do you represent, you represent Athletico, right? Correct. Okay. You assigned the lien. You can't keep it. It doesn't remain with you after it's been assigned. Well, two points to that, Your Honor. To use an analogy, let's say you have a mortgage on your house with Bank A, and Bank A tries to assign that mortgage and that debt to Bank B, but there's something invalid about that assignment. Does that mean you have a free house? No. It doesn't mean you have a free house. Stay with me. The debt is validly assigned. There's nothing wrong with Athletico assigning its debts to MedChex if that's what it wants to do. But you can't let MedChex use the lien procedure because that's only for you. That's what Wilson says. That only belongs to you. You don't get to let other people use it. That's what Wilson says. So the debt went to them. The debt went to Athletico. That's their theory. I mean, that's what I think their theory is. And tell me what's wrong with that, why that's not a valid theory and why she doesn't have damages. Well, Your Honor, as a matter of public policy, if we say we have a statute that the legislature established to protect healthcare providers so that they can get paid for treating injured patients who may not be able to otherwise get healthcare, there's a promise that that medical bill will be paid out of settlement funds. And if you say she's damaged because she didn't get the funds released to her and then have MedChex sue her in a court proceeding under breach of contract or what have you, as a matter of public policy, that would be encouraging creditors or debtors to hang on to money that they owe other people and wait and play games unless and until the creditor has the file in action. But with all due respect, the game started with you because you assigned your rights to somebody else rather than use that lien procedure that the legislature set up for you. You said, no, no, no, we'll have somebody else do that. And if Wilson's right and you don't suggest it's not and you're not allowed to do that, then that lien procedure is gone as a way of collecting this debt. It's gone because you assigned it illegally. That's her theory. And I'm asking you, what's wrong with that theory? What's wrong with that theory is the attempted assignment of the lien to MedChex could not have extinguished Athletico's lien. That was a business transaction that if plaintiff's allegation and your what is your authority that it didn't extinguish your lien, you gave away the debt. As Wilson makes clear, the debt is fine. MedChex has the debt. They can collect on it anytime they want, but just not through a lien procedure. You can't keep it and assign it at the same time. Once you've assigned it, you've assigned the debt and you have nothing. Well, actually, they don't the plaintiff doesn't allege that in the complaint and the plaintiff has admitted on the record that it was the lien that was assigned and that Athletico was owed the money and had the debt. Well, so based on the record, there's been no discovery. So the plaintiff doesn't know what exactly the terms of the assignment are. But you're the ones who say you can't have a lien without a debt. There's a debt that go. I mean, I'm not going to take up all your time. I'm just saying to you, you have not responded to my concerns. So I don't think you can assign the lien and hold on to the lien. And I see when you improperly assign the lien, you still at the same time properly and completely assign the debt. They go together. All that Wilson says is once that's been assigned, Medchecks cannot use the lien procedure. That's only for you as a medical provider. Correct. So I'll give you a few extra minutes because I took a lot of your time. But that's that is my main concern with your suggestion that there's no claim here and no damages. Well, I think perhaps going through a brief timeline of what happened here might be helpful from a public policy and equitable perspective. And from the point of legal damages. I mean, in December 2016, she sought medical treatment from Athletico after she was injured in a car accident. And at that time, she chose not to pay her nearly $12,000 medical bill out of pocket. She decided not to submit an insurance claim. Instead, she went a medical lien option and agreed that Athletico's bill would be paid out of any funds she received in judgment or settlement of her personal injury case. In June of 2017, Athletico perfected its lien by sending its lien notice to plaintiff's personal injury attorney, John Alexander. Two months later in August 2017, Athletico sent a letter to Mr. Alexander, which is exhibit B to the complaint to notify him that going forward Medchecks would be managing Athletico's medical receivables. At the same time, Medchecks followed up with his with its own correspondence, letting Mr. Alexander know that Medchecks was now the billing company. And then nothing happened. Athletico did nothing. Medchecks did nothing. And for 11 months, Mr. Alexander did nothing. He didn't call Athletico or Medchecks to clear up any confusion about which company he might have to pay. He didn't object to the amount of plaintiff's medical bill. In fact, nowhere in the original complaint or the amended complaint does it say that Athletico's services were inadequate or that its fees for services were unreasonable. And plaintiff never attempted to adjudicate the to adjudicate a lien. Instead, after nearly a year in July 2018, plaintiff's counsel tried to contrive a nationwide class action by alleging that Athletico violated Illinois law when it attempted to assign its statutory lien to Medchecks. But I still don't think plaintiff has explained how that invalid and ineffective transaction that she wasn't a party to damaged her. I mean, she's in the same economic position now as she would have been in had Mr. Alexander sent Athletico money. She's in the same economic position now as she would have been in had she paid her medical bill out of pocket. And she's in the same financial position now that she would have been in had Mr. Alexander paid Medchecks. And under Illinois law, relatively recently in the Lewis v. Blood Industries case, the Supreme Court made very clear, you have to have a change in your economic position to your detriment to have a claim. And she does not. So what is the consequence to Athletico for illegally assigning blame? There's a statute there for a reason. So what's the consequence? I don't see how there should be a consequence if there's no damage in having done it. She owes $12,000 medical bill. She has not paid for medical services. Athletico has accepted a discount for Medchecks and Medchecks is out of pocket. So if anybody's in a detrimental position to where they started is Medchecks. And as your honors pointed out, there were other bases for the dismissal of plaintiff's complaint that the court addressed. And if I have time, if I'm not cutting into Mr. Poore's time, I'd be happy to address those. Yeah, let me give you a couple more minutes because I said I used quite a bit of your time. Take two more minutes. And then if there's no more questions, we'll turn to your call counsel. Well, if I may ask, the circuit court just could not understand whether or not the plaintiff had suffered damages, economic damages, and ultimately must have concluded that she had not. Would you like to address the court's ruling on that? Yeah, I think we have. I think that the court's reasoning is very similar to the reasoning that I've just presented to you. She owes money to somebody. Whether there's an invalid lien or not, she owes money to someone. She's in debt to someone. That money should never have been hers. The second she got settled or her attorney got settlement money, it should have been used to pay her medical bill. And on that basis, the court found that there wasn't any debt or it wasn't any damage. There couldn't be any damage because the $12,000 isn't hers. She owes it to someone. That was the court's basis. And I do agree with that basis. And I agree with her other bases for dismissing the causes of action as well. Thank you. With respect to the Consumer Fraud Act, counsel didn't address this, but plaintiff cannot show that she relied on the allegedly deceptive communications and therefore cannot prove proximate cause because she didn't receive the communications from the defendant, never saw them. Her attorney got them. And with respect to fraudulent concealment, the information she alleges that Atletico concealed when she sought treatment was that in the future, it might try to sign its healthcare lien to a third party or enlist a third party to help it with collections. It's just not the type of information on which a reasonable patient would rely when choosing a healthcare provider. And therefore she can't state a claim based on fraudulent omission, which the court explicitly found. As for unjust enrichment, plaintiff cannot allege that either defendant retained a benefit, let alone at her expense, because the defendant hasn't, neither defendant has petitioned to adjudicate the lien, which precludes her unjust enrichment claim under the Galvin case, which is binding precedent. Injunction, injunction as the court explained is not a cause of action. And in any event, plaintiff can't plead the threat of irreparable harm or that she has no adequate remedy at law. Why money damages wouldn't be sufficient. She sought it under several theories or why a petition to adjudicate the lien wouldn't be sufficient. With respect to her two negligence claim, Mormon applies here. She hasn't alleged any personal injury or property damage. She has an alleged fraud in count four. And with respect to count five and Mormon's exception for negligent misrepresentation, neither defendant, Athletico, one of whom is a healthcare provider, is in the business of supplying information to others for the guidance in their business transactions, which is required for that exception to apply. And as for declaratory judgment, as this court explained in the BMO Harris v. Jackson Towers case, declaratory judgments are not designed to address controversies after claims for damages have arisen, after the alleged wrongful conduct already occurred, as is the case here. The alleged wrongful conduct was the assignment of the lien and that's already occurred. And so as the district or the circuit court correctly held, count six came too late. Let me just ask you one question about that last point. Sure. Isn't what she's alleging, not the assignment of the lien, that's already occurred, but the ongoing potential for enforcement of the lien, the holding on to the lien, which is what requires her lawyer to hold on to the money. That is an ongoing harm that a death action would address, would it not? It's not something that occurred in the past because that's still ongoing. Well, I think the transaction that she complains about, the assignment of the lien, has already occurred. There's nothing she's going to be able to do to undo that. But also the Health Care Lien Act gives her the right to adjudicate the lien by filing a petition. That's her form of declaratory judgment under the law. If she thinks this is a plaintiff's counsel thinks nobody's owed that $12,000 and the client should get to keep it and get free health care, then she should adjudicate the lien. I don't think declaratory judgment would be appropriate under these circumstances. Okay. Let's move on to your co-counsel unless somebody else has more questions. Thank you. Thank you. May it please the court, King for representing MedCheck. I'm going to address the motion to amend. The question here is straightforward. That's whether the trial court abused its discretion in denying the motion to amend. The court correctly ruled that it should not be allowed for two basic reasons. First, uh, it was untimely. And second, it even assuming that it was timely, that the two new counts did not come close to curing the defects in the original complaint. Now as to why the motion to amend is untimely on page 24 of our brief, we cite three cases, Compton, Thomas, Redemption, and Keptchen, and they all come to the same basic conclusion. And that is that a motion to amend that comes after final judgment, even if it's coupled with a motion to reconsider and does something more than tries to conform the pleadings to the proof is untimely. And the plaintiff here in her reply brief makes no attempt to address Compton, Thomas, Redemption, or Keptchen. It simply cites one case, uh, Rettlich, and in, and that case was easily distinguished in Compton itself at the end of the opinion where the court held that, uh, in that case, the underlying judgment had been vacated. And therefore, I mean, it makes sense there was no more final judgment. But if, if this court affirms the final judgment, it is really on all fours with Compton, Thomas, Redemption, and Keptchen. And as my co-counsel just pointed out, not only do we have the grounds to affirm, uh, on the basis of that, there was no identifiable damages. Uh, the circuit, circuit court had alternative reasons to dismiss all six counts because they failed to allege any, any of the required elements. And in the opening brief of the plaintiff here, they simply don't address those. Uh, and, and Supreme court rule three 41 H seven, it was very clear. If you don't raise issues in your opening brief, you, those are forfeited. So let me ask you, what's, what's, is there really that much difference between the amended complaint and the original complaint? Is this really kind of, I mean, we're supposed to read the complaint very broadly before we dismiss. And yes, the amended complaint goes into some more detail about the IOLTA fund, et cetera, but aren't they really in essence, pretty similar? What's the big difference? Uh, that's, that's, uh, if they're not, if they were considered as timely and you know, we, we think they shouldn't because they're an attempt to actually, uh, cure the original defect. And, and we should not lose sight of the fact that the amended complaint only proffers two new counts. That is the first count is the injunction count. And that doesn't cure the basic problem that injunctions are not, are not separate causes of action. And even if they were, um, there there's, there's absolutely no reason that, that, uh, there would be an inadequate remedy of law. The lien act itself says, uh, we, we give you an, uh, a, a remedy to adjudicate the lien. That's, that's a very obvious adequate remedy at law and not to mention that they've already alleged damages. So what the first count of the amended complaint does is essentially the same, and it doesn't come close to curing the original defects and under the Loyola factors that the Supreme court set out. If you don't cure with the amended complaint, you don't have to consider the other four factors of the law. Failing to cure is enough reason not to allow the amendment. And then as to your point about the, uh, the second count, that's the declaratory judgment. Uh, here again, that doesn't change much of anything is, uh, uh, the declaratory judgment account says that there's this ongoing conduct. Well, there's no ongoing conduct other than the allegation that, uh, the putative class might be exposed to these, uh, similar types of, um, invalid assignments. But if the main plaintiff here cannot state a claim, then the supposed ongoing conduct as to other members of a class in a, in a case where there's no class certified, uh, that doesn't matter at all. And so, uh, I guess conversely council, if the original complaint was sufficient to state a claim, then whether or not it was a timely amendment is sort of irrelevant as well. Well, I, I would agree with that. Then you get back to the Ruckler case. If the, if it did state a claim, then you're, uh, there really is no reason to amend. But in this case, we, we believe for all the reasons we've argued already that, uh, the putting aside the damages issue, which we've spent a lot of time on today, but as talent, my co-counsel also pointed out, there's a whole separate, uh, six reasons to deny all six counts, which were never even argued by the plaintiff here. And you can't just say, well, we can get around that because the court can do some equity here. That's, that's not, that's not the rule under 341 H seven. You have to raise issues. You have to develop them. Um, otherwise a, uh, an appellee doesn't know where to even arguments and something like that. And so the, the trial court relied upon those other, those other grounds. And, uh, those are independent grounds to affirm. And if those are independent grounds to affirm the declaratory judgment, uh, amended count doesn't change much of for conduct, uh, that has not occurred. But if you have conduct that has occurred in this case, that is ripened into damages and they're alleging damages here, the declaratory judgment case comes too late. That's the BMO, uh, uh, case that, that we cite and that's, that's solid Illinois law. It comes too late. This is a classic case of, uh, uh, declaratory judgment. It's sort of trying to scoop up a claim for, for damages. And so for, for both those reasons, even if this, uh, amended complaint complaint was timely and it was not, uh, it just fails to cure the original defects. And then, and finally, just to keep one thing is important to keep in replete and the trial court, the trial court denied that. And, uh, that's, that's, that ruling has not been appealed. What has been appealed when it comes to the amended complaint is the, the issue of this new complaint. So this is not a case in which a plaintiff has had a complaint denied for the first time and has never had an opportunity to file an, uh, an amended complaint. They have, they filed an amended complaint. And after the fact it was too late. And even if it wasn't, they haven't cured the original defects in the, uh, their first complaint. So for all those reasons, the court did not abuse its discretion when denying this motion to amend. And for that reason, and for that reason, the, the courts, uh, entire ruling should be affirmed. Thank you. Counsel, before I turn to, uh, the rebuttal, do either of my colleagues have any additional questions? Counsel? Okay. Thank you. Uh, Mr. Alexander, Mr. Drury. Yes, judge. Thank you. Um, first responding to Athletico's, uh, counsel, and I believe I heard counsel say that we somewhere agreed that money was due and that it would be paid by our client. There's nothing in the record to suggest that we agreed to pay anything. There was a hypothetical, uh, example given by my assuming this and that, and then he talked about a debt and the lien. There was never any admission on our part that any money was due and owing. And counsel for Athletico, uh, in a good part of her argument says, well, there's money due, there's a debt due, there's money owed. Again, there's nothing to show that anything is owed in this record. And we were denied discovery and counsel for MedChex, you know, uh, said, well, we were never denied an opportunity to file an amended complaint. Yes, we were because the judge, excuse me, counsel, if you're trying to bring a class action, are you really suggesting that it's going to get into whether or not there is an actual valid debt? I mean, that's not a common question for a class action, whether there's reasonable, you know, reasonable medical fees due. I mean, the common question you're trying to raise is, as Justice Johnson put it, what is the remedy if they improperly assign this lien? What, if anything, is a remedy? And the assumption of that class-wide claim is people went to the doctor, they got the money to Atletico, improperly assigned it. So there's no valid lien out there. That's the class-wide issue. There can't be a class-wide issue as to whether her bill is really $12,000 or $9,000 or $7,000, right? I agree with you, Your Honor. And the motion, the original motion for class certification, where we listed different issues, the question of the debt and, you know, what is owed, if anything, by each putative class member is not one of the questions which we raised. We do focus on the lien, and that is the issue. Unfortunately, we have never had an opportunity to get to the class question. But going back briefly to Atletico's counsel's comment about what's due and what's not due, I would like to hear from Atletico's counsel what was paid by this $12,000 bill, maybe $500? I mean, we have no discovery. We don't know what's happening here. So considerably abbreviated with respect to Atletico's argument, I will stand on what I said in my opening comments to the court. And there was a comment about on the ICFA count that the plaintiff never saw anything because it went to her attorney, Mr. Alexander. Well, Mr. Alexander, as an attorney, an attorney by definition is the agent. Notice to the agent is notice to the principal, even if that is a major issue here, which I do not believe that it is. With respect to whether or not we've stated the necessary allegations for an injunction, which has been raised by both counsel, of course we stated the necessary elements. Is it a cause of action? No, it's not a cause of action. But the statute provides that you can file a petition for injunctive relief. And that's exactly what we have done here. Call it a count, call it a petition. We have all of the necessary elements to satisfy an injunction count. I'm not going to go through the elements. Everybody, you know, of course knows what those elements are. So as to declaratory judgment, I've already addressed it. It's an ongoing situation with these defendants. On the motion to amend, we filed a motion to vacate, a motion to reconsideration, and a motion to amend. They were all presented to the court at the same time. The judge ruled before she ruled on anything on the motion to reconsider and denied it. And then went into the question of filing an amended complaint, which she denied. From day one, your honors, the trial court was not going to give us an opportunity to present our case. I've seen cases where there's five complaints, six complaints filed. We never had an opportunity. And the main reason for that is that the trial court didn't recognize or chose, I don't, didn't recognize that we're not talking about extinguishing the debt here. That was one of the court's many comments. The debt isn't extinguished. The debt isn't extinguished. So what? We're talking about the lien. And we never had an opportunity to get to that. Lastly, counsel, both attorneys for counsel for athletical counsel for med checks talks about, well, the, the amended, the amended complaint doesn't allege anything new. I addressed that and answered to judge McPherson's questions. What, what it is, but what about the original complaint? That was the complaint that was dismissed with prejudice. We never got into whether we stated allegations under the amended complaints, which we asked the court to consider. Mr. Poore also mentioned with the amended complaint that all it is are two counts with additional facts, which he disputes as there's additional facts, injunction, a declaratory judgment, but skips over what I had stated earlier that we incorporated by reference each and every count of the first complaint in order to protect the record for purposes of and counsel that did the plaintiff sit on her rights to render it inequitable for this court to hear the case on the merits that goes to their forfeiture argument. And should the trial court have allowed us to proceed with discovery and go forward on with our case. And for all these reasons, I would ask that the appeal orders be reversed and the case be remanded to the trial court for further proceedings. Thank you. Thank you counsel. Thank you all counsel. I apologize for my courtroom having disappeared in the middle of the argument. I'm having zoom issues, which I think we've all had, but anyway, thank you all. We will take this under advisement. It was very interesting argument and you will hear from us shortly. Thank you.